IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 22, 2003

## STATE OF TENNESSEE v. MELISSA LEE SHOLTZ[1]

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 237322     Rebecca J. Stern, Judge**

---

**No. E2002-01170-CCA-R3-CD**
**August 12, 2003**

---

The appellant, Melissa Lee Sholtz, pled guilty in the Hamilton County Criminal Court to one count of telephone harassment, a Class A misdemeanor. Pursuant to the plea agreement, the appellant was sentenced to eleven months and twenty-nine days in the county workhouse, with the sentence to be suspended and served on unsupervised probation. As a condition of probation, the appellant was ordered to have no contact with the victim. The trial court subsequently revoked the appellant's probation after finding that the appellant had violated the terms of probation by having contact with the victim. On appeal, the appellant argues that the trial court abused its discretion in revoking her probation. Upon review of the record and the parties' brief, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Lisa Z. Espy, Chattanooga, Tennessee, for the appellant, Melissa Lee Sholtz.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; William H. Cox, District Attorney General; and Mary Sullivan Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Factual Background

On August 29, 2001, the appellant pled guilty to the telephone harassment of Sharon Overby. Pursuant to the plea agreement, the appellant was sentenced to eleven months and twenty-nine days in the county workhouse, with the sentence to be suspended and served on probation. As a condition of her probation, the trial court ordered the appellant to have no contact with the victim,

---

[1] In the indictment, the appellant was referred to as "Melissa Lee Sholtz, Alias Melissa Lee Leffew."

except as "permitted or required by the Circuit Court."[2]  On April 1, 2002, the State filed a request to revoke the appellant's probation, alleging that on March 8, 2002, the appellant violated the terms of her probation by going "within 15 feet of [the victim] in [the victim's] mother-in-law's driveway, cussing her, making threats, etc."

At the revocation hearing, Robert Taylor Sholtz, Jr., the appellant's ex-husband, testified that he and the appellant have a five-year-old daughter who lives with the appellant.  He stated that "a little after September [2001]," he married Sharon Overby, the victim in the instant case. Robert testified that since being placed on probation on August 29, 2001, the appellant had called the victim numerous times.[3]  He stated that on two occasions while his daughter was at the couple's house for visitation, the appellant called the Bradley County Sheriff's Department, asking the officers to go to the house and check on the welfare of the child.  Robert further testified that on March 8, 2002, while his daughter was visiting his mother, the appellant went to his mother's house, claiming that the child needed her glasses.  The appellant was accompanied by her aunt and officers from the Soddy-Daisy Police Department.  When the appellant and the officers arrived, he and the victim were at the house and the officers asked the victim to leave.  Robert related that as he and the victim were leaving, the appellant called the victim a "whore" and a "home wrecker."

Robert testified that since being placed on probation, the appellant had also vandalized the victim's vehicle and made contact with the victim through his daughter, stating that on numerous occasions "my daughter has come up to [the victim] and grabbed her by the throat and said, 'My mamma called you an old bitch.'"  Robert further related that one day after eating at Shoney's Restaurant with his daughter, his parents, and the victim, the appellant called to inform him that she had "someone" follow the group to Shoney's and that she knew where each person sat while eating.

During Robert's testimony, the State played an audiotape recording of telephone calls placed to the Bradley County Sheriff's Department on November 10, 2001, and December 27, 2001. Robert identified the caller's voice as that of the appellant.  In both calls, the appellant requested that an officer be sent to 645 Old Chattanooga Pike, Lot 16, to check on the welfare of her four-year-old daughter.[4]  In the November 10th recording,  the caller explained that her daughter was "supposed to be having visitation with her dad . . . in Hamilton County," but she had been advised that her daughter had been taken to the aforementioned address in Bradley County.  In the December 27th

---

[2] At the time of the appellant's plea in the Hamilton County Criminal Court, she and her ex-husband, Robert Sholtz, Jr., had matters pending in the Hamilton County Circuit Court regarding the custody of their minor child.  The testimony at the revocation hearing indicated that on October 23, 2001, the circuit court issued an order prohibiting the victim from being in the presence of the child unless and until Robert Sholtz, Jr., and the victim married.  The circuit court's order was not included in the criminal court's record on appeal.

[3] Because the last name "Sholtz" is shared by the appellant and two of the witnesses, we have elected to utilize first names for the purposes of brevity.  We intend no disrespect by this procedure.

[4] The address provided by the appellant to the Bradley County Sheriff's Department is that of the victim.

recording, the appellant stated that her daughter was "not at [her] ex-mother-in-law's where she [was] supposed to be." On both dates, the Bradley County Sheriff's Department agreed to send an officer to that address to check on her daughter's well-being.

On cross-examination, Robert conceded that he was unable to recall on what date he and the victim married. However, he related that it was the same day that the Chancery Court issued the restraining order prohibiting the victim from being around his daughter until the couple married. Nevertheless, he stated that for several months following his marriage to the victim, he did not take his daughter around the victim, but instead stayed at his mother's house during visitation. When asked if he told the appellant about his marriage to the victim, Robert responded that within a week of marrying the victim, the victim's attorney informed the appellant's attorney of the marriage. Robert also related that he had attempted to call the appellant on several occasions, but the appellant would not answer the phone. Robert explained that, pursuant to a court order, he and the appellant were allowed to call each other regarding the welfare of their daughter.

Ruth Sholtz, Robert's mother, testified that in November 2001, following dinner at Shoney's Restaurant, the appellant called and "told us . . . where we sat." Ruth further related that on March 8, 2002, officers from the Soddy-Daisy Police Department accompanied the appellant to Ruth's house where the appellant's daughter was visiting. Ruth explained that when the officers arrived, the victim was at her house and the officers made the victim leave. She stated that the following weekend the officers again accompanied the appellant to her house "for the same reason."

Judy Hughes, the appellant's aunt, testified on behalf of the appellant. She testified that after November 5, 2001, she began taking and picking up the appellant's daughter for visitation with her father. She related that on March 8, 2002, she accompanied the appellant to Ruth's house. However, Hughes stated that she and the appellant remained in their vehicle while the police officer talked to Robert and the victim. The officer asked the victim to leave Ruth's house. Hughes testified that the appellant did not speak to the victim or call her any names.

The appellant testified at the revocation hearing that she asked the Bradley County Sheriff's Department to check on the welfare of her daughter because she "was told that in order to prove that [the victim was] breaking the restraining order, . . . [the appellant] would have to have a police report stating that [the victim] was in [the] child's presence." The appellant explained that she was concerned about her daughter's well-being because her daughter had returned from visits with the victim with bruises on her face and back and had started wetting the bed. The appellant acknowledged that if Robert and the victim married, the restraining order would be "resolved." However, the appellant stated that she did not learn of the marriage until January and that when she asked Robert about the marriage he told her "[it] was none of [her] business." The appellant testified that since obtaining the restraining order against the victim, she had hired a private detective to follow Robert and the victim. She stated that the private detective followed Robert, the victim, and the rest of the family to the Shoney's Restaurant.

The appellant testified that on March 8, 2002, she and the Soddy-Daisy police went to Ruth Sholtz's house to check on the welfare of her daughter. The appellant related that she knew the victim was at Ruth's house because her daughter told her so during a phone call. The appellant explained that when the Chancery Court issued the restraining order, her ex-husband told her that he was not going to abide by it. Moreover, on December 27, 2001, Robert assured the appellant that he would have their daughter at Ruth's home, but when the appellant called to speak with her daughter, Ruth told the appellant that she did not know where her daughter was.

The appellant testified that, in checking on the welfare of her daughter, she did not call the victim because she did not want the victim to have proof that she had called. The appellant also related that Robert never told her that he was living with the victim in Bradley County. The appellant testified that while at Ruth's house on March 8, 2002, she did not call the victim names. She further denied that since being convicted she had called the victim many times or vandalized the victim's car. On cross-examination, the appellant stated that she did not believe that by going to the police station to enforce the restraining order, she had "contacted" the victim.

Based upon the foregoing testimony, the trial court revoked the appellant's probation, finding,

> I find that [the appellant] has violated the conditions of her no-contact order and probation on . . . three occasions: When she sent the police over on November 10th; when she sent the police on December 27th; and when she made the phone call to [Ruth] Sholtz's house after having them followed to Shoney's and called to tell where everyone was sitting.

> I find that she violated on those three occasions at least, and I'm going to order that she do three weekends when the child is gone to the father's house, three consecutive times.

> . . . .

> [T]hen she'll be restored to the same conditions of probation with a continuing admonishment "no contact through anybody, including police."

## II. Analysis

On appeal, the appellant argues that "the trial court abused its discretion in revoking the [appellant's] probation." Initially, we note that, upon finding by a preponderance of the evidence that the appellant has violated the terms of her probation, a trial court is authorized to order an appellant to serve the balance of her sentence in confinement. Tenn. Code Ann. §§ 40-35-310 (1997), -311(e) (Supp. 2002); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Such probation revocation rests in the sound discretion of the trial court and will not be overturned by this court on appeal absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001). To

-4-

find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. Harkins, 811 S.W.2d at 82; State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

In the instant case, the trial court ordered as a condition of probation that the appellant have "[n]o contact with [the] victim, Sharon Overby, other than that permitted or required by [the] Circuit Court."[5] The trial court subsequently revoked the appellant's probation based upon the appellant's telephone calls to the Bradley County Sheriff's Department on November 11, 2001, and December 27, 2001, which calls resulted in an officer going to the victim's house to check on the welfare of the appellant's daughter. The trial court also based the revocation on the appellant's telephone call to her former mother-in-law's house after having a private investigator follow the family to Shoney's Restaurant. On none of these occasions did the appellant have contact with the victim.

At the beginning of the revocation hearing, the trial court stated that the no contact order included "direct" or "indirect" contact. However, on the judgment of conviction, the trial court did not specify direct or indirect contact. Regardless, there is no evidence of direct or indirect contact with the victim. As we have noted, the trial court based its revocation on the appellant's telephone calls to the Bradley County Sheriff's Department and to her former mother-in-law. Accordingly, we conclude that the trial court abused its discretion in revoking the appellant's probation. Therefore, we reverse the order of the trial court directing the appellant to serve three weekends in the Hamilton County Workhouse before being returned to probation.

### III. Conclusion

For the aforementioned reasons, the judgment of the trial court is reversed.

_____
NORMA McGEE OGLE, JUDGE

---

[5] The record on appeal includes a copy of the plea agreement and the judgment of conviction, but no transcript of the guilty plea hearing at which the appellant was sentenced.